UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PAUL DOUGLAS CREIGHTON,

v. Case No. 8:18-cr-352-VMC-AAS
8:26-cv-774-VMC-AAS

UNITED STATES OF AMERICA.

________________________________/

**ORDER**

This cause is before the Court on Paul Douglas Creighton's pro se 28 U.S.C. § 2255 Motion to Vacate, Set Aside or Correct Sentence. (Civ. Doc. ## 1-2; Crim. Doc. ## 84-85). The United States of America filed a response. (Civ. Doc. # 4). Mr. Creighton filed a reply. (Civ. Doc. # 7). The Motion is denied.

## I. Background

### A. Filing of Criminal Case

In July 2018, Mr. Creighton, a Canadian citizen, was charged with enticing a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b) (Count One) and production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e) (Counts Two and Three). (Crim. Doc. # 1). The charges arise from Mr. Creighton's online relationship with a fourteen-year-old girl in Florida. (Crim. Doc. # 36 at 18).

Pursuant to a plea agreement, Mr. Creighton pled guilty to Counts One and Two of the indictment. (Crim. Doc. ## 36, 39-41, 81).

The plea agreement contained the following term in which the United States agreed not to oppose Mr. Creighton's application to the international prisoner transfer program:

> If the Defendant is eligible and applies to transfer his sentence pursuant to the international prison transfer program, the Government agrees to not oppose the Defendant's transfer application, provided that the Defendant does not otherwise breach the plea agreement. Defendant acknowledges and understands, however, that the transfer decision rests in the sole discretion of the Office of International Affairs ("OIA") of the Criminal Division of the United States Department of Justice and that the position of the Government is neither binding nor determinative of the positions of other federal agencies or on the final transfer decision of OIA. Defendant further understands that in addition to OIA, federal law and the underlying transfer treaties require that the foreign government must also approve the transfer. The Defendant understands that should the Government decide to oppose his application for the reasons stated, or if the Defendant is denied acceptance into the transfer program for any reason notwithstanding the position of the Government, he will not be able to withdraw his plea of guilty.

(Crim. Doc. # 36 at 6).

The plea agreement also contained an appellate waiver:

> The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred

> in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

(Id. at 15-16) (emphasis original).

### B. **Change of Plea Hearing**

During the change of plea hearing, Magistrate Judge Amanda Arnold Sansone went over the plea agreement and other matters in detail with Mr. Creighton, who was under oath. (Crim. Doc. # 81 at 4). Mr. Creighton had a copy of his plea agreement in front of him and swore that he had reviewed it with his attorney. (Id. at 7-8). The Court discussed the provision in the plea agreement regarding the international prisoner transfer program, and Mr. Creighton swore that he understood the nature of the provision. (Id. at 9-10). The colloquy was as follows:

> THE COURT: Now, also on page six there's a promise here that [the United States] agreed not to oppose the Prisoner Transport Program and that's that if you're eligible and if you — and it applies to transfer your sentence pursuant to the International Prisoner Transfer Program, then the

> government agrees that it's not going to oppose that application.
>
> It goes on, though, to explain that it's really not up — that even though the U.S. Attorney's Office is — agrees not to oppose it, then it's really within the — that decision is in the sole discretion of the Office of International Affairs, so OIA, and that's within the Criminal Division of the Department of Justice.
>
> Do you understand that too?
>
> THE DEFENDANT: Yes.

(Id.).

Assuring the Court that he understood the charges and that he had reviewed the plea agreement with his attorney, Mr. Creighton pled guilty. (Id. at 7-8, 38). Mr. Creighton understood that if he had gone to trial the United States needed to prove the elements of the offenses charged in Counts One and Two. (Id. at 23–25). Likewise, Mr. Creighton assured the Court that he had read the factual basis in the plea agreement and that the factual basis was true in all material aspects. (Id. at 26-37).

Mr. Creighton swore that no one had threatened or coerced him to plead guilty and that he was pleading guilty freely and voluntarily. (Id. at 11). Mr. Creighton affirmed that he made the decision to plead guilty after speaking with his attorney. (Id. at 11-12). The Court went over the appellate

waiver provision in the plea agreement and explained to Mr. Creighton that he would be "giving up [his] right to appeal [his] sentence, except for in four very limited circumstances." (Id. at 20). The Court then explained each of the four circumstances in which Mr. Creighton would retain his right to appeal his sentence, and Mr. Creighton swore that he understood. (Id. at 20-22).

Mr. Creighton swore that he had an opportunity to fully discuss the charges and review the facts and evidence with his attorney, Nicole Hardin. (Id. at 6). Mr. Creighton swore that he discussed with Ms. Hardin all his options in the case, including the option to go to trial. (Id. at 6-7). Mr. Creighton swore that Ms. Hardin had done everything he had asked her to do in the case and that he was "[v]ery satisfied" with her advice and representation. (Id. at 7).

Having determined that a factual basis supported the guilty plea, the Court found Mr. Creighton's plea to be both knowing and voluntary. (Id. at 40). The Court accepted his plea and adjudicated him guilty. (Crim. Doc. # 41).

### C. Sentencing & Direct Appeal

On December 13, 2024, this Court sentenced Mr. Creighton to a guidelines sentence of life imprisonment. (Crim. Doc. # 48 at ¶ 104; Crim. Doc. # 57).

On January 8, 2025, Mr. Creighton filed a notice of appeal. (Crim. Doc. # 58). However, on a motion to voluntarily dismiss filed by Mr. Creighton's appellate counsel, Jenny Devine, the Eleventh Circuit dismissed Mr. Creighton's appeal in March 2025. (Crim. Doc. # 83).

### D. Section 2255 Motion

Now, Mr. Creighton seeks relief pursuant to Section 2255. (Civ. Doc. ## 1-2; Crim. Doc. ## 84-85). The United States of America responded (Civ. Doc. # 4), and Mr. Creighton replied. (Civ. Doc. # 7). The Motion, which raises three grounds, is ripe for review.

## II. Discussion

The parties agree that the Motion is timely and cognizable. (Civ. Doc. # 4 at 5-6). Mr. Creighton bears the burden of proving that he is entitled to relief under Section 2255. Rivers v. United States, 777 F.3d 1304, 1316 (11th Cir. 2015). If the Court "cannot tell one way or the other" if a claim has merit, the Court "must deny the § 2255 motion." In re Moore, 830 F.3d 1268, 1273 (11th Cir. 2016). "It must do so because the movant will have failed to carry his burden of showing all that is necessary to warrant § 2255 relief." Id.

### A. Ground One

In his first claim, Mr. Creighton asserts that his trial

counsel, Nicole Hardin, was ineffective during the plea process. "Upon discovering petitioner was a Canadian citizen, Ms. Hardin became eager to convince petitioner to plead guilty under the strong impression the best route was to seek the government's agreement that it would not oppose petitioner's participation in the Prisoner Transport Program." (Civ. Doc. # 2 at 2). According to Mr. Creighton, "[r]ather than investigating, researching, or preparing a defense, Ms. Hardin came to [their] second meeting and notified petitioner 'I already sent an email to the prosecutor for treaty transfer.'" (Id.). He alleges that he has "suffered extreme prejudice because Ms. Hardin was so convinced petitioner would be deported to Canada that her entire representation was focused on securing such a result. But the assistant United States attorney did not have authority to execute such an agreement." (Id. at 4). Mr. Creighton asserts that Ms. Hardin "knew" the plea agreement's transfer concession "could not be fulfilled." (Id. at 3). This claim fails.

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish deficient performance, Mr.

Creighton must demonstrate by a preponderance of the evidence "that particular and identified acts or omissions of counsel were outside the wide range of professionally competent assistance." Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (internal citations and quotation marks omitted). In other words, he must show that "no competent counsel would have taken the action that [his] counsel did take." Id. at 1315. In deciding whether an attorney's performance was deficient, courts are "highly deferential" and "indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Id. at 1314 (internal quotation marks omitted).

To satisfy Strickland's second prong — prejudice — Mr. Creighton must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The Supreme Court has held that "the two-part Strickland [] test applies to challenges to guilty pleas based on ineffective assistance of counsel," and that "to satisfy the 'prejudice'

requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 58-59 (1985).

"There is a strong presumption that statements made during the plea colloquy are true. Consequently, a defendant bears a heavy burden to show that his statements under oath were false." Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007) (citations omitted). The Court is mindful that a "section 2255 motion is not designed to account for buyer's remorse regarding a defendant's decision to plead guilty." Dawson v. United States, No. 8:16-cr-500-VMC-AEP, 2019 WL 11704149, at *6 (M.D. Fla. Apr. 15, 2019).

Mr. Creighton made many statements under oath at his change of plea hearing that undercut his claim that Ms. Hardin was ineffective in connection with his acceptance of the plea agreement. Mr. Creighton contends that Ms. Hardin "rendered deficient performance by seeking a governmental concession to induce the plea which she knew could not be fulfilled." (Civ. Doc. # 2 at 3). But Mr. Creighton's own statements during the plea colloquy demonstrate that he understood the nature of the provision regarding the international prison transfer program. The Court explained to Mr. Creighton that, although

the U.S. Attorney's Office agreed not to oppose his application to the international prison transfer program, the decision on the application would be left to "the sole discretion of the Office of International Affairs." (Crim. Doc. # 81 at 10). Mr. Creighton swore that he understood this provision. (Id.). Mr. Creighton has not offered any support for his conclusory claim that Ms. Hardin "knew" this provision "could not be fulfilled." (Civ. Doc. # 2 at 3). Accordingly, Mr. Creighton has not demonstrated that any of Ms. Hardin's actions in connection with the plea process "were outside the wide range of professionally competent assistance." Chandler, 218 F.3d 1314 (internal citations and quotation marks omitted).

In any event, even if Mr. Creighton could establish deficient performance, he has not shown that "the outcome of the plea process would have been different with competent advice." Ivory v. United States, 153 F.4th 1358, 1366 (11th Cir. 2025) (internal quotation marks omitted). Rather, during the change of plea hearing, Mr. Creighton swore that he had an opportunity to fully discuss the charges and review the facts and evidence with Ms. Hardin, that Ms. Hardin had done everything that he had asked her to do in the case, and that he was "[v]ery satisfied" with her advice and

representation." (Crim. Doc. # 81 at 6-7). Mr. Creighton further swore that he made the decision to plead guilty after discussing with Ms. Hardin all his options in the case, including the option to go to trial. (Id. at 6-7, 11-12).

Mr. Creighton has not met the heavy burden of showing that his statements during his plea colloquy were false. See Winthrop-Redin v. United States, 767 F.3d 1210, 1217 (11th Cir. 2014) ("[B]ecause Winthrop-Redin made statements under oath at a plea colloquy, 'he bears a heavy burden to show his statements were false.'" (citation omitted)). Thus, the Court does not credit Mr. Creighton's new allegations that his counsel's alleged ineffectiveness resulted in him being "condemned to die in prison." (Civ. Doc. # 2 at 4). He has not established that his counsel was ineffective or that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.

The Motion is denied as to Ground One.

**B. Ground Two**

Next, Mr. Creighton argues that his appellate counsel, Jenny Devine, "rendered ineffective assistance during the direct appeal." (Civ. Doc. # 2 at 5). He asserts: "Prior to researching this case for meritorious constitutional claims,

Ms. Devine informed petitioner, 'In order to expedite the treaty transfer process, you have to drop the appeal.'" (Id.). According to Mr. Creighton, "counsel abandoned petitioner by possessing the mistaken belief petitioner would immediately be deported to Canada if the appeal was dismissed. At no time was petitioner advised of any appellate strategy or whether potential appellate issues were present. Counsel's only stance was that petitioner should authorize dismissal of the appeal and, under duress, petitioner agreed." (Id.).

"Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland." Brooks v. Comm'r, Alabama Dep't of Corr., 719 F.3d 1292, 1300 (11th Cir. 2013) (internal quotation marks and citation omitted). "A defendant can establish ineffective assistance of appellate counsel by showing: (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal." Shere v. Sec'y, Fla. Dep't of Corr., 537 F.3d 1304, 1310 (11th Cir. 2008). Appellate counsel is "not ineffective for failing to raise a non-meritorious issue on appeal." McFadden v. Sec'y, Dep't of Corr., No. 17-10384-F, 2017 WL 7065743, at *3 (11th Cir. Sept. 6, 2017).

Mr. Creighton has failed to show that his appellate

counsel was ineffective or that he was prejudiced by any alleged ineffectiveness. With respect to deficient performance, Mr. Creighton offers nothing more than his conclusory assertion that Ms. Devine advised him to dismiss the appeal so that he "would immediately be deported to Canada" and that, "under duress, [he] agreed." (Civ. Doc. # 2 at 5). Mr. Creighton's barebones claim that he agreed to dismiss the appeal "under duress" is not supported by any factual allegations and, therefore, is not sufficient to show that Ms. Devine was ineffective. See Houston v. United States, No. 8:09-cr-379-SCB-TBM, 2014 WL 585025, at *7 (M.D. Fla. Feb. 12, 2014) ("Vague, conclusory, or speculative allegations that lack factual substantiation are not sufficient to support an ineffective assistance of counsel claim.").

Addressing the merits of Ms. Devine's advice to voluntarily dismiss the appeal, such advice was in line with Mr. Creighton's goal of serving his prison sentence in Canada. Specifically, at the sentencing hearing, Mr. Creighton's trial counsel stated that Mr. Creighton's main priority was "to transfer his sentence to Canada just so that he can see his family and not, you know, die in a foreign jail on foreign soil." (Crim. Doc. # 78 at 31). According to the Prisoner

Transfer Treaty between the United States and Canada, one of the requirements to be eligible for transfer is that "no proceeding by way of appeal or of collateral attack upon the Offender's conviction or sentence be pending in the Sending State and that the prescribed time for appeal of the Offender's conviction or sentence has expired." Prisoner Transfer Treaty, U.S.-Can., art. II(e), Mar. 2, 1977, 30 U.S.T. 6263. Accordingly, Mr. Creighton has not demonstrated that Ms. Devine's advice to dismiss the appeal to expedite a potential transfer was "outside the wide range of professionally competent assistance." Chandler, 218 F.3d at 1314 (internal citations and quotations omitted).

Even if Mr. Creighton sufficiently demonstrated that Ms. Devine's performance was deficient, he has not alleged, let alone shown, that "but for counsel's deficient performance he would have prevailed on appeal." Shere, 537 F.3d at 1310. Mr. Creighton does not dispute that, pursuant to the plea agreement, he waived the right to appeal his sentence unless (1) "the sentence exceeds the defendant's applicable guidelines range as determined by the Court," (2) "the sentence exceeds the statutory maximum penalty," (3) "the sentence violates the Eighth Amendment," or (4) the United States "exercises its right to appeal the sentence imposed."

(Crim. Doc. # 36 at 15-16) (emphasis in original). Here, the Court imposed a guidelines sentence of life, which did not exceed the statutory maximum penalty, and the United States did not appeal the sentence. Furthermore, even if the appellate waiver did not apply, Mr. Creighton does not identify any meritorious argument that could have been raised on appeal. Thus, Mr. Creighton has failed to establish prejudice.

The Motion is denied as to Ground Two.

**C. Ground Three**

Finally, Mr. Creighton argues that his "plea was improperly induced" because "[t]rial and appellate counsel convinced petitioner the best resolution is to agree to a plea which the government could not fulfill, then to dismiss the appeal on the same basis." (Civ. Doc. # 2 at 6). He continues: "The assistant United States attorney did not have authority to suggest petitioner could participate in the Prisoner Transfer Program. However, to insert such a clause in the plea agreement was the specific inducement for petitioner's plea." (Id.).

**1. Procedural Default**

The United States is correct that such claim is procedurally barred because Mr. Creighton could have raised

the argument that that his plea was involuntary on direct appeal. (Civ. Doc. # 4 at 12 n.3); see Bousley v. United States, 523 U.S. 614, 621 (1998) ("The voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review. Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." (citation and internal quotation marks omitted)). "Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." Lynn v. United States, 365 F.3d 1225, 1234 (11th Cir. 2004). Mr. Creighton's appeal of his judgment of conviction was voluntarily dismissed. (Crim. Doc. # 83). Thus, Mr. Creighton's failure to pursue an appeal in which he could have raised the involuntary plea issue is a procedural default to his 2255 Motion.

"A defendant can avoid a procedural bar only by establishing one of the two exceptions to the procedural default rule. Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error. Under the second exception, a court may allow a defendant to proceed with a §

2255 motion despite his failure to show cause for procedural default if a constitutional violation has probably resulted in the conviction of one who is actually innocent." Lynn, 365 F.3d at 1234 (citations and internal quotation marks omitted)). Mr. Creighton has failed to establish either exception.

True, ineffective assistance of appellate counsel qualifies as cause. As the Court addressed for Ground Two, however, Mr. Creighton has not established that his appellate counsel was ineffective. For that reason, Mr. Creighton has failed to establish cause and prejudice for his default.

Mr. Creighton does not attempt to establish the actual innocence exception. Even if he had raised it, Mr. Creighton cannot establish that he is actually innocent of the crimes for which he was convicted. He admitted under oath the truth of the factual basis for his plea during his plea colloquy. (Crim. Doc. # 81 at 26-37). And Mr. Creighton has not met the heavy burden of showing that his statements during his plea colloquy were false. See Winthrop-Redin, 767 F.3d at 1217 ("[B]ecause Winthrop-Redin made statements under oath at a plea colloquy, 'he bears a heavy burden to show his statements were false.'" (citation omitted)). Mr. Creighton's admission of guilt under oath, which is supported by the evidence in

this case, establishes that he is not actually innocent. Thus, Ground Three is dismissed as procedurally barred.

**2. Merits**

Alternatively, this claim fails on the merits. "A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack." Winthrop-Redin, 767 F.3d at 1216 (quoting Machibroda v. United States, 368 U.S. 487, 493 (1962)). "A guilty plea is knowing and voluntary if the defendant entered the plea without coercion and with the understanding of the nature of the charges and the consequences of the plea." United States v. Speight, 454 F. App'x 785, 787 (11th Cir. 2011).

Mr. Creighton argues that his plea was "improperly induced" because trial counsel convinced him that his best option was to "agree to a plea which the government could not fulfill." (Civ. Doc. # 2 at 6). Again, however, Mr. Creighton made numerous statements under oath at his change of plea hearing undercutting that his plea was involuntary.

Mr. Creighton had a copy of his plea agreement in front of him during the hearing and swore that he had reviewed it with his attorney. (Crim. Doc. # 81 at 7-8). As previously discussed, the Court specifically addressed the provision

regarding the international prisoner transfer program. (Id. at 9-10). Mr. Creighton swore that he understood that the United States agreed not to oppose his application for transfer but that the ultimate decision would be made by OIA. (Id.). Mr. Creighton assured the Court that he had read the factual basis in the plea agreement and that, in all material aspects, the factual basis was true. (Id. at 26-37). Mr. Creighton further averred that he made the decision to plead guilty after speaking with his attorney and swore that no one had threatened or coerced him to plead guilty and that he was pleading guilty freely and voluntarily. (Id. at 11-12). Accordingly, the record demonstrates that Mr. Creighton "entered the plea without coercion and with the understanding of the nature of the charges and the consequences of the plea." Speight, 454 F. App'x at 787.

To the extent Mr. Creighton baldly asserts that the United States did not uphold its duty under the plea agreement (Civ. Doc. # 2 at 4), this conclusory allegation fails to establish entitlement to relief. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (holding that conclusory statements, unsupported by specific facts or the record, are insufficient to demonstrate entitlement to habeas relief). In the plea agreement, the United States agreed only to not

oppose Mr. Creighton's transfer application. (Crim. Doc. # 36 at 6). Mr. Creighton has presented no evidence that the United States opposed Mr. Creighton's transfer application. The fact that OIA ultimately denied his transfer request does not establish that the United States violated the plea agreement.

## III. Evidentiary Hearing

As the Court readily determined that Mr. Creighton's Motion lacks merit, no evidentiary hearing is required. See 28 U.S.C. § 2255(b) (stating that an evidentiary hearing is not necessary if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"); see also Hernandez v. United States, 778 F.3d 1230, 1232-33 (11th Cir. 2015) ("To establish that he is entitled to an evidentiary hearing, Hernandez had to allege facts that would prove that his counsel performed deficiently and that he was prejudiced by his counsel's deficient performance.").

## IV. Certificate of Appealability and Leave to Appeal In Forma Pauperis Denied

The Court declines to issue a certificate of appealability because Mr. Creighton has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2). Nor will the Court authorize Mr. Creighton to proceed on appeal in forma pauperis

because such an appeal would not be taken in good faith. See 28 U.S.C. § 1915(a)(3). Mr. Creighton shall be required to pay the full amount of the appellate filing fee pursuant to Section 1915(b)(1) and (2).

Accordingly, it is now

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Paul Douglas Creighton's pro se 28 U.S.C. § 2255 Motion to Vacate, Set Aside or Correct Sentence (Civ. Doc. ## 1-2; Crim. Doc. ## 84-85) is **DENIED**.

(2) The Clerk is directed to enter judgment accordingly and to **CLOSE** this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 18th day of August, 2026.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE